IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMOND PATTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18-cv-00693 |
| | ) |
| CITY OF CHICAGO et al., | ) Judge John J. Tharp, Jr. |
| | ) |
| Defendants. | ) |

**ORDER**

Defendants Michael Malinowski, Richard Hanrahan, Vladan Milenkovic, and Martin G. Murphy's motion to dismiss [178] is granted because the statute of limitations bars the plaintiff's claim against them. Those defendants are dismissed with prejudice. Defendant City of Chicago's motion to dismiss [180] is also granted, but the Court grants the plaintiff leave to amend by March 26, 2026, for the reasons explained below.

**STATEMENT**

**I. Background**

The plaintiff, Demond Patton, was driving in his car with his girlfriend on February 25, 2016, when Chicago Police Department ("CPD") officers, defendants Milenkovic and Malinowski, along with a third, unidentified officer, arrested Patton and his girlfriend pursuant to an investigative alert after they parked at a grocery store.[1] Third Am. Compl. 2–3 ¶¶ 11–13. Since both Patton and his girlfriend were arrested, there was no one present to drive Patton's car home. *Id.* at 3 ¶¶ 16–17. As a result, Malinowski requested the car be towed. *Id.* at 4 ¶ 29. The vehicle was then towed and impounded. *Id.* at 3 ¶ 19.

Patton says he never received notice that his vehicle was impounded. *Id.* at 6 ¶ 38. After his arrest, Patton remained incarcerated. *Id.* at 3 ¶ 21. As a result, he asked his mother to help him locate his car. *Id.* at 4 ¶ 25. Patton's mother was able to locate the pound where the car had been towed, but when she arrived there on April 8, 2016, she was told that the vehicle had been destroyed. *Id.* at 4 ¶¶ 25–26.

Patton, acting pro se, sued the "City Auto Pound Two (Manager)/Supervisor" for destroying his car. Compl. 1, 4–5, ECF No. 1. The Court granted his petition to proceed in forma pauperis. Upon screening Patton's original complaint, this Court determined that he had stated a

---

[1] On a motion to dismiss, the Court assumes all facts alleged in the plaintiff's complaint are true. *Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025).

claim for a procedural due process violation. Order 3, ECF No. 5 ("Plaintiff has plausibly alleged that he was deprived of a protected property interest in his car, with no notice or other process prior to Defendant authorizing its destruction. Plaintiff also contends that Defendant took this action pursuant to authorized state procedures. This is sufficient to state a procedural due process claim."). In the same Order, the Court also substituted the City of Chicago as the defendant to facilitate service. *Id.* Patton submitted an amended complaint on October 1, 2018, adding Malinowski, Hanrahan, and Milenkovic as defendants. Am. Compl. 1, ECF No. 32. Patton then moved for attorney representation, which was granted. Patton did not add Murphy as a defendant until his second amended complaint, filed through his counsel on May 29, 2019. Second Am. Compl. 1, ECF No. 62.

In his operative complaint, Patton alleges that the City's policies "[do] not allow an avenue for prisoners who are incarcerated for more than 30 days to recover their property." Third Am. Compl. 8 ¶ 51. He claims that the city's policy, and the officers who failed to provide him with adequate notice, violated his Fourteenth Amendment procedural due process rights. The individual officers and the City of Chicago each moved to dismiss Patton's complaint.

On a motion to dismiss, the Court accepts the pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Viewed in this light, a complaint must state a facially plausible claim to relief to overcome the motion to dismiss. *Id.* The Court evaluates both motions to dismiss below.

## II. Individual Officers

Patton sued CPD Officers Milenkovic, Malinowski, Hanrahan, and Sergeant Murphy (the "Officer Defendants"). Milenkovic and Malinowski were the arresting officers, Hanrahan was the attesting officer, and Murphy was the approving supervisor. *Id.* at 3 ¶ 13. The Officer Defendants moved to dismiss the complaint, in part on the ground that the statute of limitations bars Patton's claim.

Patton's cause of action comes from 42 U.S.C. § 1983, meaning he only had two years to bring his claims. *Mitchell v. Donchin*, 286 F.3d 447, 450 n.1 (7th Cir. 2002) ("To determine the proper statute of limitations for section 1983 actions, the federal court adopts the forum state's statute of limitations for personal injury claims. Pursuant to 735 ILCS 5/13–202, the statute of limitations for section 1983 cases filed in federal court is two years." (citation omitted)).

Patton's claim accrued, and the two-year clock started running, when he first knew or had reason to know of his injury. *Licari v. City of Chicago*, 298 F.3d 664, 668 (7th Cir. 2002). The injury here was the deprivation of Patton's property, and he had reason to know of the deprivation by April 8, 2016, when his mother learned his car had been destroyed.[2] The statute of limitations on Patton's claim therefore ended no later than April 8, 2018, but Patton did not sue any of the Officer Defendants until October 1, 2018.

Patton contends that his claims against the Officer Defendants can nonetheless proceed because his amended complaints relate back to the date of his original complaint, which was filed

---

[2] Apparently, the car was actually sold, Officers' Mot. Dismiss 2 n.1, ECF No. 178, but that makes no difference to this Court's analysis. Either way, Patton was deprived of his property.

within the statute of limitations period. An amended pleading relates back to the date of the original pleading only if the "the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c). A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (quoting Black's Law Dictionary 1092 (9th ed. 2009)).

Because he did not have an attorney when he first filed his claim, Patton says, he made the mistake of suing the pound manager instead of the Officer Defendants—a mistake that should qualify for relation back under Rule 15. Resp. to Officers 7, ECF No. 184. The Officer Defendants, on the other hand, maintain that Patton's operative complaint does not relate back because the plaintiff chose to sue the pound manager rather than the Officer Defendants. Officers' Mot. Dismiss 7, ECF No. 178. That, they say, was an intentional choice rather than a mistake about the officers' identity. *Id.* Patton clearly knew who the officers were, because he mentioned Malinowski by name in his original statement of claim. *Id.*

The parties' focus on what **Patton** knew when he filed his first complaint is misplaced. "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the [90 days allotted for service], not what the plaintiff knew or should have known at the time of filing her original complaint." *Krupski*, 560 U.S. at 548. As such, the relevant question is whether the Officer Defendants knew or should have known that Patton would have sued them absent a mistake on his part. *Id.* at 549. The answer is no: There is no basis alleged to allow an inference that the Officer Defendants knew anything about Patton's original complaint, and that complaint did not indicate that Patton would have sued the Officer Defendants absent some mistake. In fact, Patton's original complaint did not indicate that he was suing over a lack of notice but rather that the pound had crushed his car, allegedly in violation of local law. Compl. 5. Though Patton was indeed mistaken about what local law allowed, that mistake had nothing to do with the Officer Defendants' identities and did not indicate to them that they were the proper defendants. And while Patton is right that pro se plaintiffs generally receive more leniency, Resp. to Officers 8, the Officer Defendants were unaware during the designated time frame that they would be sued and thus have "a strong interest in repose." *Krupski*, 560 U.S. at 550.

Because the Officer Defendants did not, within the time allotted for service, know or have reason to know that they were the defendants who the plaintiff really wanted to sue, Patton's claims against them do not relate back and are therefore time-barred.[3]

### III. City of Chicago

Cities, like the City of Chicago, can be held liable for constitutional violations under the Supreme Court's decision in *Monell v. Department of Social Services*. 436 U.S. 658 (1978). The elements of a Monell suit are as follows: first, the plaintiff must show that his constitutional rights were violated. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Next, he must "trace the deprivation to some municipal action (i.e., a 'policy or custom'), such that the challenged conduct is 'properly attributable to the municipality itself.'" *Id.* (citation omitted).

---

[3] Patton also sued an officer John Doe. That claim is also time-barred, because substituting the correct defendant for a John Doe after the statute of limitations has run does not relate back. *Herrera v. Cleveland*, 8 F.4th 493, 495 (7th Cir. 2021) ("[K]nowingly suing a John Doe defendant is not a 'mistake' within the meaning of Rule 15(c) . . . .").

Third, he must prove municipal fault, and finally, "that the municipal action was the moving force behind the federal-rights violation." *Id.* (citation modified). The City of Chicago moved to dismiss Patton's complaint for failing to allege either a constitutional violation or a municipal action.

### A. Constitutional Violation

"A procedural due process claim requires a two-fold analysis. First, we must determine whether the plaintiff was deprived of a protected interest; second, we must determine what process is due." *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). The Fourteenth Amendment's due process clause assures notice and an opportunity to be heard to those who may be deprived of their life, liberty, or property. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). Patton had a protected property interest in his car. The more difficult question is whether the City of Chicago afforded Patton due process before violating that protected interest.

To satisfy due process, notice "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Gates v. City of Chicago*, 623 F.3d 389, 401 (7th Cir. 2010) (quoting *Mullane*, 339 U.S. at 314). But when the state action causing the deprivation is "random and unauthorized" rather than "pursuant to an established state procedure," it is not always possible for the state to provide pre-deprivation process. *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804–05 (7th Cir. 2010) (citations modified). Under those circumstances, "the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Id.* at 805 (quoting *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."). A bailment action under Illinois law is "an adequate postdeprivation remedy" when the state damages vehicles, because it provides a way for the owner to receive compensation for the damage. *Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002).

The City of Chicago's municipal code lays out the procedures the City must follow when impounding vehicles pursuant to the traffic code, including vehicles towed incident to arrest. Chi., Ill., Mun. Code § 9-92-030.

> [T]he department of police or the department of streets and sanitation shall within ten days thereafter ascertain, if possible, from the Secretary of State of Illinois the name of the owner and of any other person legally entitled to possession of such motor vehicle by reason of an existing conditional sale contract having a lien as chattel mortgagee, or any other reason, and cause to be sent to such owner and to such other person legally entitled to possession, if known, a notice of the impoundment including a full description of the vehicle. If the impounded vehicle is currently registered with the Secretary of State's office, notice shall be sent to the owner and any other person legally entitled to possession of the vehicle by certified mail. If the impounded vehicle is not currently registered with the secretary of state's office, such notice shall be sent to the most recent registered owner at the most recent registered address by first class mail.

4

*Id.* § 9-92-070(a).[4]

    To determine whether Patton successfully stated a procedural due process claim against the City, this Court first must determine whether he alleges that the City acted pursuant to a policy or a random act. If it was a random act, then Illinois law provides sufficient process in the form of a bailment action. Patton alleges that he did not receive any notice about his car's impoundment.[5] Drawing all reasonable inferences in Patton's favor, either the City sent the notice to his home address during his incarceration (and so Patton did not receive it), or the City never sent any notice at all. The former would mean the City acted pursuant to policy; the municipal code says to send notice, and the City did so. The latter, though, would be a "random and unauthorized" act in contravention of the municipal code—unless Patton established that despite the City's official, written, policy of providing notice, it had a custom of not providing the requisite notice. Patton makes no such allegations, however; he alleges only that the City failed to provide him with such notice. And if the city never sent notice at all, then Patton's only remedy lies in a bailment action, not in a § 1983 suit.

    Assuming, then, that the City sent notice of the impoundment to his home, Patton has adequately alleged that the City did not provide sufficient process before depriving him of his property. Patton alleges that the Officer Defendants had actual knowledge of his incarceration. Third Am. Compl. 10 ¶ 70. In *Robinson v. Hanrahan*, the Supreme Court held that sending notice of forfeiture proceedings to the home of a person the state knew was incarcerated was not reasonably calculated to actually provide notice. 409 U.S. 38, 40 (1972). The Court notes that if Patton had actual notice of his car's impoundment, he would not have a procedural due process claim. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). At this stage, however, Patton's allegation that he never received notice of the impoundment is sufficient to draw the inference that he did not have actual notice.

    The City also maintains that it cannot be held liable because its municipal code follows Illinois state law requirements regarding notice. City's Reply 4–5, ECF No. 191. Illinois policy is therefore responsible for any injury, it argues, not the City. *Id.* at 4 (quoting *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) ("When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal

---

[4] Patton asserts that CPD Special Order S07-03-06, 625 Ill. Comp. Stat. 5/11-208.7 (West 2025) and CPD-12.156 set forth the applicable procedures for impounding a vehicle seized by police. Third Am. Compl. 5 ¶¶ 35–37; *id.* at 6–7 ¶¶ 41–43. The City correctly points out, however, that these provisions are inapplicable. Special Order S07-03-06 and CPD-12.156 relate to procedures for impounding vehicles subject to forfeiture based on a vehicle's connection to a crime. The cited state law, 625 Ill. Comp. Stat. 5/11-208.7 (West 2025), is irrelevant because a municipality cannot be liable based on a policy of a state (unless adopted by the municipality).

[5] To the extent Patton's claim is premised on not receiving notice of **how** to retrieve his car (*e.g.*, Third Am. Compl. 3 ¶ 24: "Patton did not receive any notice describing the procedure to retrieve the impounded vehicle"), it fails because the procedures for recovering impounded vehicles are publicly available as part of the municipal code. Chi., Ill., Mun. Code § 9-92-080; *City of W. Covina v. Perkins*, 525 U.S. 234, 240–41 (1999); *Conyers v. City of Chicago*, 162 F. Supp. 3d 737, 745 (N.D. Ill. 2016) ("Due process does not require individualized notice of state law remedies that are set forth in materials generally available to the public.").

law, rather than anything devised or adopted by the municipality, that is responsible for the injury.")). But state law allows for municipalities to provide either personal service *or* mailed service. 625 Ill. Comp. Stat. 5/11-208.7 (West 2025). Reliance on state law, then, is no defense. If the City knew Patton was incarcerated, service mailed to his home would not have been reasonably calculated to provide notice.

### B. Municipal Action

The City further contends that Patton has not pled facts sufficient to create the reasonable inference that the challenged conduct is properly attributable to the City itself; in other words, the City says that there was no municipal action. A plaintiff can show municipal action of at least the following three kinds: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citation omitted). Again assuming that the City sent notice to Patton's home (since that is the only way this case can move forward in this Court), Patton's claim is one about the city's express policy: the portion of the municipal code requiring notice.

A *Monell* claim about a city's express policy takes one of two forms. Either the plaintiff alleges that the policy "explicitly violates a constitutional right when enforced," or he "object[s] to omissions in the policy." *Calhoun v. Ramsey*, 408 F.3d 375, 379–80 (7th Cir. 2005). In the latter, the plaintiff must point to "more evidence than a single incident to establish liability." *Id.* at 380. Patton's claim must be of the latter variety, because the municipal code does require notice. It just doesn't state how that notice should be sent, nor does it provide specifically for incarcerated persons. To state a *Monell* claim, then, Patton must point to other incidents where the City sending notice to an incarcerated person's home pursuant to Section 9-92-070(a) of the municipal code caused a constitutional violation. Because he has not done so, he has not stated a claim.[6] But because he could add factual allegations regarding other incidents, the Court grants him leave to amend his complaint.

\* \* \*

Patton did not add the Officer Defendants to his suit until the statute of limitations had already run, and his claims against them do not relate back. For that reason, the Officer Defendants are dismissed with prejudice. Because Patton does not sufficiently allege municipal action, his claim against the City of Chicago also fails. He may amend his complaint with respect to the City by March 26, 2026. As detailed above, however, Patton's case may only proceed if the City sent

---

[6] Patton argues that in allowing his claim to go forward after screening the claim pursuant to 28 U.S.C. § 1915A, the Court has already decided he stated a claim. Resp. to Officers 8; Resp. to City 5, ECF No. 185. This amounts to an argument that the Court's 1915A screening order, finding that Patton had stated enough of a claim to permit service, should be considered the law of the case. "The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). But the law-of-the-case doctrine is discretionary, *id.*, and this Court declines to apply it where there was no adversarial presentation before the screening order.

notice to his house and there are other prior incidents where the City mailing notice to an incarcerated person's home caused unconstitutional deprivations.

Date: March 5, 2026

John J. Tharp, Jr.
United States District Judge